ORIGINAL
O&F
c/m

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JUSTIN MAYNARD,

        Plaintiff,

-against-

HARRAH'S ENTERTAINMENT, INC., and THE
POOL AT HARRAH'S RESORT,

        Defendants.
------------------------------------------------------------x
HARRAH'S ENTERTAINMENT, INC. and THE
POOL AT HARRAH'S RESORT,

        Third-Party Plaintiffs,

-against-

JOSHUA COLE,

        Third-Party Defendant.
------------------------------------------------------------x

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ MAY 1 1 2010 ★
BROOKLYN OFFICE

**MEMORANDUM AND ORDER**
Case No. 09-CV-3128 (FB) (SMG)

*Appearances:*
*For Plaintiff:*
ANDREW WIESE, ESQ.
Sacco & Fillas, LLP
141-07 20th Avenue
Whitestone, New York 11357

*For Defendant/Third-Party Plaintiff:*
CHRISTOPHER C. MAURO, ESQ.
ERIC S. MALINOWSKI, ESQ.
Camacho, Mauro & Mulholland, LLP
350 Fifth Avenue
New York, New York 10118

**BLOCK, Senior District Judge:**

        In April 2008, Justin Maynard ("Maynard") was a guest at The Pool at Harrah's Resort ("The Pool") in Atlantic City, New Jersey. He alleges that he was attacked by another Pool guest and suffered injuries. Maynard sued The Pool and its parent, Harrah's Entertainment (collectively, "Harrah's") in New York Supreme Court, Kings County; Harrah's removed the case to this Court on the basis of diversity. Harrah's now

seeks a change of venue to the United States District Court for the District of New Jersey under 28 U.S.C. § 1404. The motion is denied.

I

Maynard is a New York resident; he claims that Harrah's is a corporation organized under Delaware law, with a principal place of business in New York. Compl. at ¶ 2. Harrah's claims to be a New Jersey resident. Pet'n for Removal at ¶ 5. Maynard alleges that the premises of the Pool were maintained in a "dangerous and unsafe condition" about which Harrah's knew or should have known. Compl. at ¶ 50-51. Maynard was a guest at The Pool on April 6, 2008, when, in the Complaint's ponderous verbiage, "Plaintiff was caused to be struck about his person and be precipitated to the ground, said incident occurring as a result of the negligence" of Harrah's. Compl. at ¶ 52 (so in original) (translation: "Someone hit me. I fell down. Harrah's is responsible.").[1] Maynard claims to have suffered severe and permanent injuries as a result of the attack. Compl. at ¶ 55. On June 11, 2009, he sued Harrah's in the New York Supreme Court, Kings County, for negligence, demanding money damages and punitive damages; he did not specify a monetary amount but did aver that the amount "exceed[ed] the monetary jurisdictional limits of all lower [New York State] courts which would otherwise have jurisdiction." Compl. at 13.

In its removal papers, Harrah's claimed to be organized under New Jersey law with a principal place of business in that state, and averred that Maynard had alleged

---

[1] Maynard's complaint does not name his assailant, another guest at The Pool named Joshua Cole. See p. 3, infra.

that the "matter in controversy exceeds the value of $75,000.00[.]" Pet'n at ¶¶ 4-5. Harrah's Answer denied each and every paragraph of Maynard's complaint. *See* Ans. at ¶¶ 1-77.

Harrah's impleaded one Joshua Cole ("Cole"), a resident of New Jersey.[2] Harrah's alleged that Cole was Maynard's assailant on April 6, 2008. *See* Harrah's Compl. at ¶¶ 6-9 (Dec. 3, 2009); *see also* 28 U.S.C. § 1367 (defining parameters of the Court's supplemental jurisdiction). Cole was served with process at his residence in Barnegat, New Jersey. *See* Docket Entry No. 10 (Dec. 26, 2009). He has not appeared in the action. The third-party complaint includes allegations of personal jurisdiction over Cole that largely track New York's long-arm statute. *Compare* N.Y. C.P.L.R. § 302(a) (McKinney 2010) *with* Harrah's Compl. at ¶¶ 13-16. Counsel for Harrah's attests that Maynard has obtained a cash settlement from Cole. Malinowski Decl. at ¶ 3 (Feb. 26, 2010).

## II

### A. *Jurisdiction*

Neither party has raised the issue of whether this case was properly removed; "[n]evertheless, because a challenge to subject matter jurisdiction cannot be waived, and because where jurisdiction is lacking, dismissal is mandatory," the Court is obligated, *sua sponte*, to consider whether the requirements of diversity jurisdiction are met in this case.

---

[2] Harrah's obtained leave of the Court to file a third-party action pursuant to Rule 14. *See* Minute Entry (Nov. 16, 2009); *see also* Fed R. Civ. P. 14(a)(1). The parties alternately refer to Maynard's assailant as "Joshua Cole" and "Joshua Corle." The Court assumes for purposes of this motion that they are the same person, and uses the spelling "Cole" since that spelling appears on the docket.

3

*Mehlenbacher v. Azko Nobel Salt, Inc.*, 216 F.3d 291, 293 (2d Cir. 2000) (internal marks and citations omitted). The diversity statute states, in relevant part:

> The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States[.]

28 U.S.C. § 1332(a). The diversity of the parties is not in question. The only allegation concerning the amount in controversy, however, has been made by Harrah's; Maynard did not put a dollar amount on his claim. As the removing party, Harrah's "has the burden of proving that it appears to a reasonable probability that the claim is in excess of the statutory jurisdictional amount." *United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Props. Meridien Square, Inc.*, 30 F.3d 298, 305 (2d Cir. 1994). "To determine whether that burden has been met," the Court looks "first to [Maynard's] complaint and then to [Harrah's] petition for removal." *Mehlenbacher*, 216 F.3d at 296.

Maynard's complaint fails to specify a dollar amount. Harrah's petition for removal pleads that there is more than $75,000 at stake. Pet'n at ¶ 4. Maynard has not moved to remand in the ten months since the case was removed. Accordingly, based on the petition for removal, the Court concludes that there is a "reasonable probability" that the jurisdictional minimum is satisfied. *United Food*, 30 F.3d at 305.

### B. *Venue*

The statute governing transfer provides:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). Section 1404(a) is intended to guard against waste "of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal marks omitted).

It is undisputed that venue would be proper in the New Jersey District Court; Maynard, as a New York resident, could have sued in diversity against Harrah's, a New Jersey resident. *See* 28 U.S.C. § 1391(a)(1) (providing that a diversity action may be brought in a judicial district where any defendant resides). Thus, the issue is whether transfer is appropriate for convenience and in the interest of justice. That determination is within the "discretion [of] the district court," and is to be decided "according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (internal citation and marks omitted). As the movant, Harrah's bears the burden of establishing that transfer is appropriate. *Factors Etc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978). The Court's disposition of a Section 1404 motion for transfer is reviewable only "for a clear abuse of discretion." *Warrick v. Gen. Elec. Co.*, 70 F.3d 736, 740 (2d Cir. 1995).

Courts have identified a number of relevant factors in determining whether transfer is appropriate: (1) the convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the plaintiff's choice of forum; (9) trial efficiency and the interest of justice, based on the totality of the circumstances. *See Indian Harbor Ins. Co. v. Factory Mut.*

*Ins. Co.*, 419 F. Supp. 2d 395, 401-02 (S.D.N.Y. 2005) (listing factors). "There is no rigid formula for balancing these factors and no single one of them is dispositive." *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000). "Balancing factors of convenience is essentially an equitable task." *First City Nat'l Bank & Tr. Co. v. Simmons*, 878 F.2d 76, 80 (2d Cir. 1989). With respect to the convenience of witnesses in particular, "[w]here a movant requests a venue transfer based upon the cost, convenience and availability of non-party witnesses, he must identify key witnesses to be called along with a general description of the substance of their testimony." *Barr Labs., Inc. v. Quantum Pharmics, Inc.*, 827 F. Supp. 111, 114 (E.D.N.Y. 1993) (citing *Factors Etc.*, 579 F.2d at 218).

Harrah's offers the following in support of its motion to transfer:

- The incident of April 6, 2008, occurred in New Jersey.

- "Atlantic City . . . is more than 100 miles from the Southern [*sic*] District Courthouse."[3]

- Since Atlantic City is more than 100 miles away, the Court "lacks subpoena power over the Atlantic City Police Department and James Cahill (former employee [of Harrah's]) under Federal Rule of Civil Procedure 45(b)(2)."

- "Harrah's cannot effectively serve process upon Joshua Cole[.]"[4]

- Harrah's witnesses "will experience hardship in traveling to New York for depositions and trial."

- Maynard's witnesses, such as "medical experts," "could appear via [] videotaped deposition."

---

[3] The Court takes judicial notice that Atlantic City is more than 100 miles by automobile from the Theodore Roosevelt United States Courthouse in Brooklyn.

[4] Notwithstanding that Harrah's has *already served process* upon Cole.

Malinowski Decl. at ¶¶ 6-7; *see generally* Harrah's Mem. of Law at 4-9.

Maynard counters that seven eyewitnesses "were with [him] on the night" of the incident; each is a New York resident. Maynard Decl. at ¶¶ 2-3 (Mar. 19, 2010). A supplemental Rule 26(a) disclosure lists an eighth New York resident as a witness. *See* Docket Entry No. 13-6 (dated Feb. 14, 2010). Maynard's memorandum of law states that Maynard's treating physician, who would presumably testify as to the extent of injury, is also a New York resident, *see* Maynard Mem. of Law at 3, but there is no affidavit or declaration to this effect. Maynard also claims that Harrah's has far more means at its disposal than he does. *Id.* at 4. Harrah's replies that its witnesses, "the security officers and Atlantic City police officer," are higher quality witnesses than Maynard's and "crucial" to Harrah's defense. 2d Malinowski Decl. at ¶ 4 (Mar. 26, 2010). Harrah's also reiterates that it will be "unable to maintain the third-party action against Joshua Cole, as he is not subject to New York personal jurisdiction."[5] 2d Malinowski Decl. at ¶ 5.

With these contentions of the parties in mind, the Court reviews the factors relevant to motions to transfer venue.

1. **Convenience of Witnesses**

This factor tips in favor of Maynard. Harrah's claims that "crucial" witnesses are located in Atlantic City, but failed to name these witnesses, provide their addresses, or explain how their testimony is crucial. Maynard's eyewitnesses are more numerous, have names and addresses, and are all from New York State.

---

[5] Notwithstanding that Harrah's has already pleaded that Cole is subject to the personal jurisdiction of this Court. Ans. at ¶¶ 13-16.

## 2. Location of & Ease of Access to Evidence

This factor is in equipoise. Harrah's claims that it will be unable to get documents from the Atlantic City Police Department ("the ACPD"), which responded to the scene. Since some ACPD documents are already in the record, Harrah's claim is suspect. *See* Docket Entry No. 13-1 at 2, 3 (records of statements taken by ACPD officers from Maynard and one Rafael Lopez, both dated April 6, 2008). Moreover, Harrah's fails to comprehend the subpoena power of federal courts. Harrah's is free to subpoena documents from the ACPD (or any other Atlantic City resident) regardless of whether this case is transferred. A subpoena seeking documents located in Atlantic City would issue "from the court for the district where the production or inspection is to be made." Fed. R. Civ. P. 45(a)(2)(C); *see also Falicia v. Advanced Tenant Servs., Inc.*, 235 F.R.D. 5, 11, 11 n.6 (D.D.C. 2005) (construing Rule 45(a)(2)(C); district court for District of Columbia "could not issue a subpoena that required [non-party] to produce the documents" in another district, Maryland; "[n]othing precludes plaintiffs from obtaining the same information and documents" via a subpoena issued from the Maryland district court).

As the ACPD is within the District of New Jersey and would be producing documents within that district, the subpoena would issue from that court regardless of whether the case remains in the Eastern District or is transferred to New Jersey. Accordingly, this factor carries no weight in the venue analysis.

## 3. Convenience of the Parties

This factor tips slightly in favor of Maynard, a resident of Brooklyn. The Martin Luther King United States Courthouse in Newark, New Jersey, is only about ten

miles away from the Roosevelt Courthouse in downtown Brooklyn. While Brooklyn would undoubtedly be more convenient for Maynard, the Court is not convinced that the additional travel renders Newark wholly inconvenient. For its part, Harrah's fails to convince the Court that a New York forum would be inconvenient. Harrah's has already secured local counsel and fails to plead any facts (beyond access to witnesses) that would make litigating in Brooklyn inconvenient.

4. **Locus of Operative Facts**

Since the incident occurred in New Jersey, this factor tips decidedly in favor of Harrah's.

5. **Availability of Process To Compel Attendance of Unwilling Witnesses**

This factor tips ever so slightly in favor of Harrah's. Harrah's contends that it will be unable to compel the testimony of at least one witness, James Cahill. Malinowski Decl. at ¶ 6. Assuming Cahill is unwilling to travel to New York for trial, Harrah's could secure his testimony via deposition. *See* Fed. R. Civ. P. 45(a)(2)(B) (requiring deposition subpoena to issue "from the court for the district where the deposition is to be taken"); Fed. R. Civ. P. 45(b)(2)(A) (permitting service of subpoena "at any place" "within the district of the issuing court"). Deposition testimony is, of course, a poor substitute for live trial testimony; nonetheless, Harrah's claim that it "lacks subpoena power" over Cahill, Malinowski Decl. at ¶ 6, is simply wrong. As for Harrah's other witnesses (unnamed "security officers," Malinowski Decl. at ¶ 7), any hardship they might face in having to travel to New York to testify at deposition or trial is outweighed by the fact that they are

9

Harrah's employees. Harrah's is in a position to compel the appearance of its employee witnesses (and alleviate their hardships in appearing).

6. **Relative Means**

Maynard claims that Harrah's is in a "superior financial position." Maynard Mem. of Law at 4. Harrah's does not contend otherwise; the Court will therefore assume that this factor tips in favor of Maynard.

7. **Forum Familiarity With Governing Law**

Whether New York or New Jersey law apply to Maynard's claims is unclear; the parties do not argue the point. This Court applies the choice-of-law rules of New York since it sits within that state; there may yet be a debate about which body of law should apply. Nonetheless, the Court need not decide this issue now, for it is familiar with the laws of both states. This factor therefore carries no weight in the analysis.

8. **Plaintiff's Choice of Forum**

"[T]here is ordinarily a strong presumption in favor of the plaintiff's choice of forum[.]" *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981). Maynard's residence is in New York and his choice of a New York forum is entitled to due consideration.

9. **Trial Efficiency & Interests of Justice**

This factor merits some exploration. Harrah's contends that trial in New York is inefficient because it faces the possibility that it will have to bring a separate action against Cole, a New Jersey resident. Its argument fails to mention that it has already served Cole with process in this action. Reading Harrah's inartful pleadings expansively, it seems that the primary concern is that this Court may lack personal jurisdiction over

Cole—notwithstanding that Harrah's has already claimed, in a verified complaint, that personal jurisdiction exists. *See* Harrah's Compl. at ¶¶13-16. Personal jurisdiction is a waiveable defense, however, and Cole may already have waived it since he appears to be in default. *See* Fed. R. Civ. P. 12(a) (requiring an answer to be served within 21 days of service); Fed. R. Civ. P. 12(b) (listing affirmative defenses, including "lack of personal jurisdiction," that must be made before serving an answer); *see also Hubbard v. Kelley*, __ F. Supp. 2d __, No. 06-CV-236, 2009 WL 3078578, at *4 (W.D.N.Y. Sept. 24, 2009) (affirmative defense of "personal jurisdiction may be forfeited by failing to timely raise such defense"). If Harrah's obtains a default judgment against Cole, its concern over personal jurisdiction may be mooted.

Moreover, while Atlantic City is more than 100 miles of the Eastern District Courthouse, Cole's residence in Barnegat, New Jersey is not.[6] Harrah's can thus compel Cole's appearance as a witness at trial or for deposition via a subpoena from this Court, regardless of whether this Court has personal jurisdiction over him. *See* Fed. R. Civ. P. 45(b)(2)(B). Thus, Harrah's efficiency concerns are speculative—at best—at this juncture. Harrah's does not refer to any interests of justice that are violated by keeping the case in New York. Accordingly, the Court concludes that this factor is in equipoise. While

---

[6] The Court takes judicial notice that Barnegat, New Jersey, is approximately 90 miles by automobile from the Theodore Roosevelt United States Courthouse in downtown Brooklyn. *See, e.g.*, Barnegat Township—New Jersey, *History of Barnegat*, http://www.ci.barnegat.nj.us/history.html [last visited Apr. 20, 2010] ("The present day municipality of Barnegat is located . . . 90 miles south of New York City."). Driving directions obtained from Google Maps between the Roosevelt Courthouse (225 Cadman Plaza East) and Cole's residence in Barnegat (as listed on the affidavit of service, *see* Docket Entry No. 10) return an approximate driving distance (via the Garden State Parkway) of 91.2 miles. *See* http://maps.google.com/maps [last checked Apr. 20, 2010].

Harrah's has raised some efficiency concerns, those concerns are too speculative at this time to serve as a basis for transfer.

**10. Summary**

Three factors are in equipoise or otherwise not relevant. The only factor significantly weighing in favor of Harrah's is that the incident occurred in New Jersey. Maynard, by contrast, has several factors decidedly in his favor, including the convenience of witnesses, the relative means of the parties, and that, as the plaintiff, he is ordinarily entitled to his choice of forum. No single factor is dispositive, but the Court concludes, based on the totality of the circumstances, that Harrah's has failed to carry its burden to demonstrate that transfer is indicated for convenience and in the interests of justice.

### III

Harrah's motion for change of venue is denied.

**SO ORDERED.**

s/Frederic Block<br>
FREDERIC BLOCK<br>
Senior United States District Judge

Brooklyn, New York
May 10, 2010